# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:05CV29-W

| | |
|---|---|
| PHILLIP ANTWAN DAVIS,       )<br>    Petitioner,       )<br>         )<br>v.       )<br>         )<br>MARVIN POLK, Warden,       )<br>Central Prison       )<br>Raleigh, North Carolina       )<br>    Respondent.       )<br>_____) | ORDER |

   This matter is before the Court upon Phillip Antwan Davis's Jan. 11, 2008 Application for a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22. [Doc. 43.] The State has put forward no opposition to Davis's Application.

   Davis seeks to appeal the Court's denial of Claims III, IV, VIII(b) and (c), XVI, and XX of his Petition for Writ of Habeas Corpus (hereinafter "Petition") filed pursuant to 28 U.S.C. § 2254. This Court may issue a certificate of appealability (hereinafter "COA") only if Davis has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the United States Supreme Court has stated, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *See Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). However, when a district court denies a claim on procedural grounds,

> a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling.

*Slack*, 529 U.S. at 484 (emphasis added).

CLAIM III: *Trial Court's Exclusion of Davis's Letters to his Mother*

In Claim III, Davis claimed that the trial court erred by excluding letters that he had written to his mother while he was incarcerated and awaiting trial. Davis contends that the letters were relevant, admissible mitigating evidence showing his remorse for the murders.

The trial court and the North Carolina Supreme Court on direct review found that Davis's letters would have offered substantially the same evidence of remorse as the testimony of Davis's mother and other witnesses at the sentencing proceeding. This Court found that Davis had failed to overcome these presumptively correct findings of fact with clear and convincing evidence to the contrary. *See* 2254(e)(1). The Court also concluded that even if the trial court had erred in excluding the letters, Davis was unable to show that their exclusion had a "substantial and injurious effect" on the outcome of his sentence. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Davis presented evidence of his remorse through the testimony of a number of witnesses. Additionally, the jury considered other evidence of remorse, including the fact that Davis pled guilty to two counts of first-degree murder without any plea agreement with the State or promises of leniency. (R. at 154.)

Nevertheless, it is possible that reasonable jurists could find the Court's assessment of Davis's claim debatable or wrong. Therefore, the Court will issue a COA for Claim III.

CLAIM VIII(b) & (c): *Ineffective Assistance of Counsel and Appellate Counsel for Failing to Challenge Prosecutors' Closing Arguments*

In Claim VIII, Davis claimed that trial counsel were ineffective for failing to challenge

portions of the prosecutors' closing arguments and that appellate counsel were ineffective for failing to assign as error and brief the issue of prosecutorial misconduct on direct appeal. The Court concluded that Davis's ineffective assistance of trial counsel claim was procedurally defaulted. Davis has provided no argument or reason for the Court to believe that reasonable jurists would find it debatable that the Court's procedural ruling was correct. Therefore, Davis is denied a COA for his ineffective assistance of trial counsel claim.

In subsection B of this Claim, Davis contended that in arguing to the jury that there was no evidence of remorse, the prosecutor commented on the fact that Davis had not taken the stand. He asserted that the prosecutor's comments were so grossly improper that the trial court should have intervened *ex mero motu* and that appellate counsel were ineffective for failing to assign as error and argue on appeal that the trial court had abused its discretion by failing to do so. The court that considered Davis's Motion for Appropriate Relief (hereinafter "MAR") found that the prosecutor's argument that there was no evidence of remorse in this case was not a comment on Davis's exercise of his right not to testify. This Court agreed that, when read in context, the prosecutor's argument did not directly or indirectly comment on Davis's failure to testify.

Furthermore, even if the prosecutor did indirectly comment on Davis's silence, the U.S. Supreme Court has not settled whether it is impermissible in every instance for a prosecutor to comment on a defendant's decision not to testify at sentencing. The Court has held that the Fifth Amendment's prohibition against compulsory self-incrimination applies to some degree at sentencing. *See Mitchell v. United States*, 526 U.S. 314 (1999); *Estelle v. Smith*, 451 U.S. 454 (1981). Where the government bears the burden at sentencing of proving facts relevant to the crime or to aggravating factors, the Fifth Amendment prohibits the sentencing jury from drawing

a negative inference from the defendant's silence. *See Mitchell*, 526 U.S. at 316-17 (holding that when determining facts about the crime which bear upon the severity of the sentence, a trial court may not draw an adverse inference from the defendant's silence); *Estelle*, 451 U.S. at 468 (determining that prosecution's use at sentencing of defendant's unwarned statements to a psychiatrist at a compulsory competency examination to prove "future dangerousness" violated defendant's Fifth Amendment right against self-incrimination). However, as yet, there is no clearly established federal law prohibiting the sentencing jury from drawing a negative inference from a defendant's silence with respect to a mitigating factor that the defendant has introduced and for which he bears the burden of proof. *See Mitchell*, 526 U.S. at 330 (leaving open the question of whether, at sentencing, a defendant's silence "bears upon the determination of a lack of remorse").

The MAR court concluded that appellate counsel were not ineffective for failing to raise this issue on appeal because there was no reasonable likelihood that an appeal based upon such a claim would have been successful. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted). This Court concluded that the MAR court's rejection of Davis's ineffective assistance of appellate counsel claim did not result in a decision that was either contrary to or an unreasonable application of clearly established federal law. *See* § 2254(d)(1). The Court does not believe that reasonable jurists would find its assessment of this claim debatable or wrong. *See Miller-El,* 537 U.S. at 338. Therefore, Davis is denied a COA for Claim VIII(b).

In subsection C of this Claim, Davis contended that the prosecutor presented false evidence to the jury when he argued that there was no evidence of remorse in this case because Davis "[h]asn't talked about it to anyone." Davis also contended that the prosecutor exploited

the trial court's exclusion of Davis's letters to his mother to create a false impression that Davis had not expressed his remorse to anyone. Davis claimed that appellate counsel were ineffective for failing to assign as error the trial court's failure to intervene *ex mero motu* and for failing to brief the issue on direct appeal.

In *Napue v. Illinois*, the Supreme Court held that a "State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." 360 U.S. 264, 269(1959). In both his Petition and the instant Application, Davis has failed to identify any false evidence used by the prosecution. He has identified only prosecutorial argument. Argument is not evidence.

Additionally, the fact that the prosecutor knew that there was unadmitted evidence of remorse when he made his argument does not change the standard of review for the underlying alleged constitutional violation, which is whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting [sentence] a denial of due process." *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). At least a half-a-dozen witnesses testified that Davis either had expressed his remorse directly to them or had given the impression of remorse when they had spoken to him. The trial court instructed the jurors that they were to be guided by their own recollections of the evidence, even if those recollections conflicted with the attorneys' summations of the evidence during closing arguments. Except in extraordinary circumstances, jurors are assumed to follow a court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citations omitted).

The jury was responsible for recalling Davis's evidence of remorse, notwithstanding the prosecutor's argument. The MAR court concluded that there was no reasonable likelihood that an appeal on the ground of prosecutorial misconduct would have been successful. *See Smith v.*

5

*Robbins*, 528 U.S. at 285.  This Court concluded that the MAR court's rejection of Davis's ineffective assistance of appellate counsel claim did not result in a decision that was either contrary to or an unreasonable application of clearly established federal law.  *See* § 2254(d)(1).  The Court does not believe that reasonable jurists would find its assessment of this claim debatable or wrong.  *See Miller-El,* 537 U.S. at 338.  Therefore, Davis is denied a COA for Claim VIII(c).

    CLAIM IV:  *Ineffective Assistance of Counsel Surrounding Guilty Plea*

  In Claim IV of his habeas petition, Davis claimed that his guilty plea was involuntary due to ineffective assistance of counsel.  Davis asserted that had he known that trial counsel had halted their investigation into the voluntariness of his confession and that "expert" attorneys had recommended that he plead not guilty, he would not have pled guilty and would have insisted upon going to trial.  (Pet. for Writ of Habeas Corpus 47 ¶¶ 103-104.)

  As the U. S. Supreme Court noted in *Lockhart v. Hill*, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  When a petitioner enters a plea upon the advice of counsel but subsequently claims that his plea was involuntary, the voluntariness of the plea "depends upon whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id*. (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  A petitioner also must show that but for counsel's errors, "there is a reasonable probability that, . . . he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

  This Court concluded that counsel's plea advice "was within the range of competence

demanded of attorneys in criminal cases." *See McMann*, 397 U.S. at 771. As laid out in its analysis of Claim V, in which Davis claimed that counsel were ineffective for failing to move to suppress his statements to police, the Court concluded that counsel had conducted a reasonable investigation of the admissibility of Davis's confessions and had made a strategic decision not to try to suppress his statements. (Order Den. Pet. for Writ of Habeas Corpus 41-45.) Trial counsel were aware that even if Davis's confessions were suppressed, the State would introduce statements that Davis had made to family and friends acknowledging that he had killed his aunt and cousin. Furthermore, counsel were not deficient for not informing Davis of the opinions of attorneys who did not also represent Davis.

Davis also now asserts that his guilty plea was not voluntary and intelligent because counsel recommended that he plead guilty in the absence of any concessions from the State with regard to penalty.[1] Davis has never alleged that the State would have been willing to make concessions in exchange for a guilty plea. Likewise, he has never alleged that counsel were ineffective for failing to obtain concessions from the State in exchange for his plea. Furthermore, the transcript of his plea shows that Davis knew that he was pleading guilty without any concessions from the State. (R. at 38 ¶¶ 10, 13.) Davis also knew, and understood, that by pleading guilty, he was giving up his constitutional rights relating to a trial by jury, including his right to confront and cross-examine witnesses against him. (R. at 38 ¶ 7.) He does not allege that he was not informed of or did not understand the consequences of pleading guilty in the absence of a concession from the State with respect to the penalty phase. In light of the aforementioned, Davis's argument appears to be that it is *per se* ineffective assistance for an

---

[1]Davis did not argue ineffectiveness on this ground in his MAR.

7

attorney to recommend that his client plead guilty in a capital case without concessions from the State with respect to sentencing. However, Davis has failed to cite any clearly established federal law to support that argument. *See* § 2254(d)(1).

The MAR court concluded that trial counsel did not render constitutionally ineffective assistance when they recommended that Davis plead guilty and that Davis's guilty plea was knowing and voluntary. This Court concluded that the state court's rejection of Davis's claim did not result in a decision that was either contrary to or an unreasonable application of clearly established federal law. *See* § 2254(d)(1). The Court does not believe that reasonable jurists would find its assessment of this claim debatable or wrong. *See Miller-El,* 537 U.S. at 338. Therefore, Davis is denied a COA for Claim IV.

> CLAIM XVI: *Ineffective Assistance of Trial and Appellate Counsel Regarding Batson Challenge*

In Claim XVI of his habeas petition, Davis claimed that trial counsel were ineffective for failing to alert the trial court to evidence in the record that the prosecutor's explanations for excusing an African-American juror were pretextual. Davis claimed further that his appellate counsel were ineffective for failing on appeal to brief the trial court's denial of counsel's *Batson* objection, despite having assigned the issue as error. *See Batson v. Kentucky,* 476 U.S. 79, 89 (1986) (reiterating that the Equal Protection Clause forbids the State from using peremptory challenges to exclude potential jurors on the basis of race).

The prosecutor gave three reasons for excusing juror Wanda Jeter: that Ms. Jeter was wearing a "cross-shaped earring which suggested to the State a religious consideration that may impact her ability to actually send someone to death, but the [S]tate doesn't know;" that Ms. Jeter

was wearing "a Tweetie Bird shirt with a very large depiction of a cartoon character wearing a purple ball cap backwards on it, which suggests to the State that there might be a question about the juror's seriousness when she was called for jury duty;" and that "[m]ost importantly" the State had questions about Ms. Jeter's honesty regarding her brother's criminal record and pending sex offense charge. (Jury Selection Tr. 267-68.) The trial court found that the prosecutor's reasons for striking Ms. Jeter were race-neutral. (Jury Selection Tr. 268.) Defense counsel objected but did not argue that the prosecutor's reasons were pretextual. In his habeas petition, Davis argued that there were white jurors accepted by the State who were similarly dressed as Ms. Jeter and who had family members with criminal records,[2] and that the State's race-neutral reasons, therefore, were pretext for purposeful discrimination.

"'[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" *Rice v. Collins*, 546 U.S. 333, 339 (2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curium). Furthermore, a federal habeas court may only grant a petition because of a *Batson* violation if it was unreasonable for the state court to have credited the prosecutor's race-neutral explanations for the *Batson* challenge. *See id*. For the reasons set out in its Order denying Davis's habeas petition, the Court concluded that it was not unreasonable for the state courts to have credited the prosecutor's explanations for striking Ms. Jeter. Davis has not pointed to any juror accepted by the State who expressed substantially the same views regarding the death penalty and whose appearance raised concerns with the prosecutor or who was unable to satisfactorily answer the prosecutor's questions about a family

---

[2]Davis did not argue in his MAR or habeas petition that there were white jurors accepted by the prosecutor who had views similar to Ms. Jeter regarding the death penalty or who displayed religious symbols.

9

member's criminal record.[3]  *Cf. Miller-El v. Dretke*, 125 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an *otherwise-similar* nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step.") (emphasis added).  Consequently, the Court concluded that the MAR court's rejection of Davis's ineffective assistance of counsel claims did not result in a decision that was contrary to or an unreasonable application of clearly established Federal law.  The Court does not believe that reasonable jurists would find its assessment of this claim debatable or wrong.  *See Miller-El,* 537 U.S. at 338.  Therefore, Davis is DENIED a COA for Claim XVI.

> CLAIM XX: *Trial Court's Submission of both the Armed Robbery and Pecuniary Gain Aggravating Circumstances*

In Claim XX of his habeas petition, Davis claimed that he was denied due process when the trial court submitted aggravating circumstances N.C. Gen. Stat. § 15A-2000(e)(5) (murder committed during the course of a robbery) and (e)(6) (murder committed for pecuniary gain) to the jury.  Davis contends that submission of both constituted "double-counting" of aggravating circumstances, rendering his capital sentencing proceeding arbitrary and denying him his right to a fundamentally fair sentencing hearing.

This Court concluded that the state appellate court's rejection of this claim was not contrary to clearly established federal law because the U.S. Supreme Court has never held that "aggravating factors could be duplicative so as to render them constitutionally invalid."  *See Jones v. United States*, 527 U.S. 373, 398 (1999).  This Court also concluded that the state

---

[3]The Court noted in its Order denying Davis's habeas petition that the prosecutor questioned five white jurors about family members' criminal records and excused three of them.

appellate court's rejection of Davis's claim was not an unreasonable application of clearly established federal law because neither circumstance was invalid. *See Roach v. Angelone*, 176 F.3d 210, 218 (4th Cir. 1999) (In order to determine whether there was sufficient evidence to prove the existence of an aggravating factor, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt.") (citations and internal quotation marks omitted). "For pecuniary gain" is not an element of robbery under North Carolina law. *See State v. Richardson*, 467 S.E.2d 685, 692 (N.C. 1996) (citations omitted). Therefore, the jury could consider separately that the murder was committed during the course of an armed robbery and that the murder was committed for pecuniary gain. The Court does not believe that reasonable jurists would find its assessment of this claim debatable or wrong. *See Miller-El,* 537 U.S. at 338. Therefore, Davis is denied a COA for Claim XX.

For the foregoing reasons, it is hereby ORDERED THAT:

Davis's application for a Certificate of Appealability for Claim III is GRANTED, and

Davis's application for a Certificate of Appealability for Claims IV, VIII(b) & (c), XVI and XX is DENIED.

Signed: March 12, 2008

Frank D. Whitney
United States District Judge